AMENDED DECISION AND JUDGMENT ENTRY
{¶ 1} Charles Littlefield, Jr., appeals a judgment of the Washington County Common Pleas Court sentencing him to maximum, consecutive terms of imprisonment for one count of burglary and one count of receiving stolen property. He also appeals the trial court's order requiring him to pay restitution on the receiving stolen property charge.
 {¶ 2} Littlefield argues that the trial court erred in not making the statutorily required findings and reasons for imposing maximum, consecutive sentences at the sentencing hearing. We conclude that when the sentencing entry contains the required findings and reasons for imposing maximum, consecutive sentences, those findings and reasons do not need to be stated at the sentencing hearing because a court speaks through its journal entry. He also argues that the trial court erred in relying upon his prior criminal record as the sole basis for finding that consecutive sentences were not disproportionate to the seriousness of his conduct and the danger he poses to the public. We agree because a proportionality analysis must focus upon the facts and circumstances of the case before the court. Finally, Littlefield contends that the court's restitution order is improper because it requires him to pay for damages resulting from the theft of the car when he was convicted of receiving stolen property. We agree because the statute limits restitution to the actual economic loss caused by the crime for which the offender was convicted.
 {¶ 3} On February 6, 2001, Ronald Smith reported his Ford Ranger pick-up truck stolen. The next day, Marietta Police officers observed a truck matching its description traveling at a high rate of speed. The officers stopped the truck and discovered two females inside. The officers then ran the license plates and confirmed that the truck was stolen. Upon investigating, the officers learned that the driver's boyfriend had purchased the truck from Littlefield.
 {¶ 4} In June 2001, Richard Miller reported his wife's Olds 98 automobile stolen. One week later, Officer Blasko of the Marietta Police Department responded to a call about a suspected stolen vehicle. After running the license plates, Officer Blasko learned that it was Mrs. Miller's vehicle. Upon investigating, Officer Blasko learned that a man who matched Littlefield's general description drove the vehicle there and parked it. He also learned that the man had offered to sell the car to some kids in the neighborhood. The Marietta Police Department processed the car and found fingerprints that matched Littlefield's. In addition, Officer Blasko prepared a photo lineup that included a photo of Littlefield. Two witnesses identified Littlefield as the man they had seen with the car.
 {¶ 5} In December 2001, the grand jury indicted Littlefield on two counts of receiving stolen property. On February 27, 2002, the state filed a Bill of Information against Littlefield charging him with burglary, which arose from an incident where Littlefield entered the home of William and Katie Thompson in an attempt to elude the police. On the day the state filed the Bill of Information, Littlefield consented to its service. That same day he pled guilty to one count of receiving stolen property and one count of burglary, both fourth degree felonies.[1] In exchange for his guilty plea, the state agreed to dismiss the other count of receiving stolen property. The trial court accepted Littlefield's plea and ordered a presentence investigation report (PSI).
 {¶ 6} At sentencing, the trial court sentenced Littlefield to eighteen months on each charge, the maximum possible sentence, and ordered the sentences to run consecutively. In addition, the trial court ordered Littlefield to pay restitution to the Millers and their insurance company. Littlefield appeals this sentence, raising the following assignments of error: ASSIGNMENT OF ERROR NO. 1 — The trial court erred in sentencing Mr. Littlefield to maximum, consecutive sentences without making the necessary findings at the sentencing hearing, in contravention of Mr. Littlefield's right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.ASSIGNMENT OF ERROR NO. 2 — The trial court failed to comply with R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c) when ordering Charles Littlefield to serve consecutive sentences, in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.ASSIGNMENT OF ERROR NO. 3 — The trial court erred in ordering Charles Littlefield to pay restitution for damages resulting from an offense for which Mr. Littlefield was not convicted. This error deprived Mr. Littlefield of his right to due process of law, as guaranteed by theFifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
 {¶ 7} In his first assignment of error, Littlefield argues that the trial court erred in imposing maximum, consecutive sentences without making the statutorily required findings and reasons on the record at the sentencing hearing. He asserts that such findings and reasons must be made at the sentencing hearing, not just in the written journal entry.[2]
 {¶ 8} R.C. 2929.14(C) sets forth the specific circumstances in which a trial court may impose the maximum prison term on an offender. One circumstance authorizing a maximum sentence is where the offender poses the greatest likelihood of committing future crimes. If the trial court imposes the maximum sentence, then it must make a finding that gives its reasons for doing so. See R.C. 2929.19(B)(2)(d).
 {¶ 9} Likewise, R.C. 2929.14(E)(4) sets forth requirements for imposing consecutive sentences. Under R.C. 2929.14(E)(4), the trial court may require an offender to serve consecutive prison terms if the court finds "that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court finds any of the following: * * * (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." As with maximum sentences, a trial court that imposes consecutive sentences is required to make a finding that gives its reasons for imposing consecutive sentences. See R.C. 2929.19(B)(2)(c).
 {¶ 10} The trial court's journal entry contains the required findings along with the court's reasons for imposing maximum, consecutive sentences. Before imposing maximum sentences, the trial court found that Littlefield posed the greatest likelihood of committing future crime. In giving its reasons, the trial court stated: "the defendant's extensive prior criminal record makes it likely that he will commit further criminal acts." Moreover, the trial court found that the defendant's prior criminal record justified consecutive sentences. While the trial court's findings and reasons are stated in the journal entry, they were not specifically set forth at the sentencing hearing. Littlefield argues that the trial court is required to articulate its findings and reasons at the sentencing hearing. We disagree.
 {¶ 11} It is well settled that a court speaks through its journal entries. State v. King, 70 Ohio St.3d 158, 162, 1994-Ohio-412,637 N.E.2d 903; In re Adoption of Gibson (1986), 23 Ohio St.3d 170, 173,492 N.E.2d 146, fn. 3; Schenley v. Kauth (1953), 160 Ohio St. 109,113 N.E.2d 625, paragraph one of the syllabus. Previously, we have looked to the transcript of the sentencing hearing when the journal entry does not contain all of the required findings and reasons. See State v.Haugh, Washington App. No. 00CA18, 2001-Ohio-2426; State v. Hiles, Hocking App. No. 99CA23, 2000-Ohio-1984. However, we have emphasized that the better practice is for the trial court to state its findings and reasons in the journal entry. Haugh; Hiles. Because a court speaks through its journal entry, we will not require a trial court that articulates its findings and reasons in the journal entry to do so at the sentencing hearing also. Accordingly, Littlefield's first assignment of error is overruled.
 {¶ 12} In his second assignment of error, Littlefield argues that the trial court erred when it imposed consecutive sentences based only on his prior criminal record. Littlefield contends that his prior criminal record alone does not support the second required finding under R.C.2929.14(E)(4) that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. He contends that in conducting the proportionality analysis, the trial court is restricted to the seriousness of the conduct in the particular case before it. While we reject this contention, we conclude that a proportionality analysis that looks solely to the defendant's criminal history is legally flawed.
 {¶ 13} We will not overturn a trial court's sentence unless we clearly and convincingly find error in that sentence. State v. Dunwoody
(Aug. 5, 1998), Meigs App. No. 97CA11. When determining if there is error in the trial court's sentence, we engage in an analysis of the following four questions: (1) Did the trial court consider the proper factors? (2) Did the trial court make the required findings? (3) Is there substantial evidence in the record to support those findings? (4) Is the trial court's ultimate conclusion clearly erroneous? Id.
 {¶ 14} Generally, trial courts in Ohio must impose concurrent prison sentences. R.C. 2929.41(A). As noted above, a trial court may impose consecutive prison sentences by complying with R.C. 2929.14(E)(4). The inquiry under R.C. 2929.14(E)(4) is a "tripartite procedure." Haugh, 2001-Ohio-2426. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender"; second, the court must find that the consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger" he poses (Emphasis supplied.); and finally, the court must find the existence of one of the three enumerated circumstances in R.C.2929.14(E)(4)(a) through (c). Id.
 {¶ 15} The trial court found that consecutive sentences were necessary to protect the public and to punish Littlefield, that consecutive sentences were not disproportionate to the seriousness of Littlefield's conduct and the danger he poses to the public, and that Littlefield's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime. Under each of these findings, the trial court listed Littlefield's prior record as the reason behind its finding. In addressing the second requirement, the trial court stated: "Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The defendant's prior record indicates that he poses the greatest risk to the public." Littlefield argues that his prior record alone cannot support the trial court's finding that consecutive sentences were not disproportionate to the seriousness of his conduct and the danger he poses to the public. We agree.
 {¶ 16} R.C. 2929.14(E)(4) sets forth three distinct findings that must be made before the sentencing court can impose consecutive sentences. The first two findings required by R.C. 2929.14(E)(4) reflect the overriding purposes of felony sentencing as articulated in R.C.2929.11. The first finding, whether consecutive sentences are necessary to protect the public from future crime or to punish the offender, restates the overriding purposes of felony sentencing contained in R.C.2929.11(A). The second finding reflects R.C. 2929.11(B)'s directive that the sentence be commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. See Griffin Katz, Ohio Felony Sentencing Law (2002 Ed.) 710 ("the `disproportionality' concept comes directly from R.C.2929.11(B)'s admonition that a sentence should be * * *"). Under the second finding, the court must address both the seriousness of the immediate conduct and the danger he poses to the public. The seriousness component requires consideration of the facts and circumstances surrounding the commission of the crimes before the court. In conducting this part of the proportionality analysis the court may look to other sections of the Revised Code for guidance. For instance R.C. 2929.12(B) (more serious factors) and R.C. 2929.12(C) (less serious factors) are relevant. Likewise R.C. 2929.13(B)(1) provides insight into aggravating factors. These sections do not provide an exclusive list. Any other relevant factor may be considered. One such factor might be an economic loss in light of the unavailability of restitution for the victim. Other factors include use of a firearm, personal injury, value of the property taken, and whether the defendant was a leader or facilitated the participation of others in the crime.
 {¶ 17} It was proper for the court to rely on Littlefield's criminal history in assessing his dangerousness to the public because a chronic offender may need a longer sentence to protect the public even though the sentence may seem "stiff" in light of the seriousness of the immediate crime. But criminal history alone is not sufficient to satisfy both prongs of the proportionality analysis. In determining whether consecutive sentences were disproportionate to the seriousness of Littlefield's conduct and the danger he poses to the public, the trial court was required to consider the facts and circumstances surrounding his receiving stolen property and burglary charges. The balance or relative weight the court gives to each of the two prongs, however, is left largely to the sentencing court's discretion. Therefore, we conclude that a proportionality analysis that uses only a defendant's prior record does not comport with the legal requirements of R.C. 2929.11 and R.C.2929.14(E)(4). There must be some consideration of the seriousness of the specific conduct, its impact upon the victim, and consistency with other sentences for similar crimes. Because we clearly and convincingly find that the trial court did not consider the proper sentencing factors, we uphold Littlefield's second assignment of error. The cause is remanded for consideration of whether, given the facts and circumstances of this case, consecutive sentences are not disproportionate to the seriousness of Littlefield's conduct and the danger he poses to the public. We realize that we may be subject to criticism for being "overly technical." Unfortunately, as we have often noted before, we are asked to apply an overly technical statute.
 {¶ 18} In his third assignment of error, Littlefield argues that the trial court improperly ordered him to pay restitution. He contends that since he was not convicted of stealing the car, he cannot be ordered to pay restitution for the damage done during the theft.
 {¶ 19} R.C. 2929.18(A) permits a court that is imposing a sentence for a felony conviction to sentence the offender to any financial sanction or combination of financial sanctions authorized by law. Among the sanctions authorized by R.C. 2929.18(A) is restitution. R.C.2929.18(A)(1) allows the sentencing court to order "restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." Economic loss is defined as "any economic detriment suffered by a victim as a result of the commission of a felony * * *." R.C. 2929.01(M). Because we are asked to construe the legal meaning of this statute, we conduct a de novo review.
 {¶ 20} When ordering restitution, the trial court must limit its award to the actual economic loss caused by the crime for which the offender was convicted. State v. Hafer, 144 Ohio App.3d 345, 348,2001-Ohio-2412, 760 N.E.2d 56; see also State v. Hooks (2000),135 Ohio App.3d 746, 748, 735 N.E.2d 523. Thus, as a matter of law, an offender cannot be ordered to pay restitution for damage arising from a crime of which he was not convicted.[3]
 {¶ 21} At the time the Miller's car was stolen, Mr. Miller had the car keys in his pocket. When the Marietta Police Department recovered the car, there was damage to the steering column and gearshift. The damage indicated that the car had been started without the use of the key. Both parties agree that the damage occurred during the theft of the vehicle.
 {¶ 22} The state argues that the court's restitution order is valid because the car was damaged during a theft offense and Littlefield was convicted of a theft offense related to the car. While it is true that Littlefield was convicted of a theft offense related to the car, i.e. receiving stolen property, he was not convicted of stealing the car. The state also points out that Littlefield's fingerprints were found in the precise area where the car had been damaged. If the state could have shown that Littlefield damaged the car while it was in his possession then, of course, the court's restitution order would be valid. However, the state does not dispute that the damage occurred during the theft of the car. Since the court did not convict Littlefield of the theft of the car, he cannot be ordered to pay restitution for damages caused by the theft. See Hafer, 144 Ohio App.3d at 348. While the dissent focuses on the "reasonable relationship" language in Hafer, we construe that language to relate to the amount of restitution that must be established by documentation. See State v. Williams (1986),34 Ohio App.3d 33 at 34 cited in Hafer. In fact, Hafer holds that a defendant cannot be ordered to pay restitution for damages attributable to a crime for which he was charged, but not convicted. Thus, the trial court erred when it ordered Littlefield to pay restitution for the steering column and gearshift that were damaged when the car was stolen. Accordingly, Littlefield's third assignment of error is upheld.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J.: Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment and Opinion as to Assignments of Error I II; Dissents with Attached Dissenting Opinion as to Assignment of Error III.
[1] In its sentencing entry, the trial court indicates that Littlefield pled guilty to Count 1 of receiving stolen property, i.e. the Smith vehicle. However, the transcript of the plea proceedings and the court's change of plea entry indicate that Littlefield pled guilty to Count 2 of receiving stolen property, i.e. the Miller vehicle. For purposes of this appeal, this discrepancy has little impact.
[2] This issue is currently pending before the Supreme Court of Ohio inState v. Comer, Lucas App. No. L-99-1296, 2002-Ohio-233. See State v.Comer, 95 Ohio St.3d 1473, 2002-Ohio-2444, 768 N.E.2d 1182 (Table).
[3] We realize that in Hafer, we used an abuse of discretion standard of review. We conclude now that de novo review is more appropriate in light of the fact we are asked to construe the meaning of R.C. 2929.01(M) and R.C. 2929.18(A)(1).